# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Tonya R. o/b/o/ J.C., ) | |
| ) | Civil Action No.: 4:20-cv-3564-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Kilolo Kijakazi[1], Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") filed on October 14, 2021. (ECF No. 21.) The Report addresses Tonya R.'s claim for supplemental security income on behalf of her minor child, J.C. ("Plaintiff") and recommends the court affirm the decision of the Commissioner of Social Security Administration ("the Commissioner"). (ECF No. 21 at 13.) Plaintiff filed an Objection to the Magistrate Judge's Report (ECF No. 22), and the Commissioner replied (ECF No. 24). For the reasons stated herein, the court **REJECTS** the Report. The Commissioner's decision is therefore **REVERSED,** and the action is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative review consistent with this order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth relevant facts and legal standards which the court incorporates here without a full recitation. (ECF No. 21 at 1-6.) Plaintiff filed an application for disability benefits

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action is required to continue this suit under the last sentence of 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

on July 5, 2018, which was denied initially and on reconsideration. (*Id.* at 1.) After a hearing was held, an administrative law judge ("ALJ") determined that Plaintiff was not disabled as defined by the Social Security Act and not entitled to benefits. (*Id.* at 1.)

The ALJ determined that Plaintiff had the following severe impairments: autism spectrum disorder, attention deficit hyperactivity disorder, and learning disorder. (*Id*. at 2.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of the listings. (ECF No. 21 at 2.) Notably, the ALJ found Plaintiff had the following limitations in each of the six domains of functioning: (1) a less than a marked limitation in acquiring and using information; (2) a marked limitation in attending and completing tasks; (3) a less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself/herself; and (6) no limitation in health and physical well-being. (ECF No. 12-2 at 19.) Addressing several of these domains, Plaintiff's treating physician Dr. Hornsby opined[2]:

> "[Plaintiff] is very markedly-to-extremely limited in his ability to independently initiate, sustain, and complete the acquisition and use of information. [Plaintiff] is moderately limited in his ability to independently initiate and sustain attention to tasks as well as his ability to independently complete tasks. [Plaintiff] is extremely limited in his ability to independently initiate and sustain both interactions and relations with others. [Plaintiff] is markedly-to-extremely limited in his ability to independently initiate and sustain care for himself. [Plaintiff] is markedly limited in his ability to adapt and manage himself. [Plaintiff's] condition and these limitations have existed since early childhood."

(ECF No. 21 at 8.) She also noted that Plaintiff's Vyvanse prescription improved his focus and "relieve[d] some of the causes of [his] anxiety, [though] he is still very seriously limited despite treatment." (*Id*.) The ALJ characterized Dr. Hornsby's opinion as a "summary drafted by the claimant's representative" and deemed it "unpersuasive," because it was "unsupported by

---

[2] Counsel disclosed that the opinion was "typed by [Plaintiff's] counsel's office after interviewing Dr. Hornsby," who had "signed the opinion with handwritten edits." (ECF No. 21 at 8.)

2

explanation," and "inconsistent with [her] treatment records, which indicate the claimant's ability to focus attention and control impulsiveness improved with medication." (*Id*. at 9.) The ALJ acknowledged treatment notes describing Plaintiff's "increased behavioral problems," but attributed them to "the stressor of his parents' separation." (*Id*.) Notably, the ALJ did not discuss severe behavioral problems which were discussed repeatedly in treatment notes from Dr. Hornsby and her physician's assistant Jennifer Simko and highlighted in the Magistrate Judge's Report. (*Id*. at 9-12.) Ultimately, the ALJ denied disability benefits because Plaintiff was not disabled for purposes of the Social Security Act ("the Act"). (ECF No. 12-2 at 24.)

The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision. (*Id.* at 2.) Thus, the ALJ's decision became the final decision of the Commissioner. (*Id.*) *See also Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (stating that an ALJ's decision was the final decision of the Commissioner when the Council denied a request for review); *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) (holding that the Commissioner's "final decision" includes when the Council denies a request for review of an ALJ's decision). Plaintiff filed this action on October 9, 2020. (ECF No. 1.)

In the Report, the Magistrate Judge concluded that the ALJ did not err in finding Dr. Hornsby's opinion unpersuasive. The Magistrate Judge emphasized that the ALJ cited "substantial evidence" from contemporaneous treatment notes by Dr. Hornsby, which showed "some abnormal behavior and diagnosis" but "generally normal exams and improvement on medication. (ECF No. 21 at 12.) Dismissing Plaintiff's argument that the ALJ failed to consider multiple teacher assessments which were consistent with Dr. Hornsby's opinion statement, the Report indicated the ALJ considered those opinions in at least one functional domain – attending and completing tasks – in which he found that Plaintiff had a marked limitation. (*Id*.) The Report therefore concluded

3

that the ALJ's decision was supported by "more than a mere scintilla" of the record. And since substantial evidence supported the ALJ's findings, the Magistrate Judge recommended the court affirm the Commissioner's decision. (*Id*. at 13.)

The parties were apprised of their opportunity to file specific objections to the Report. (*Id*. at 14.) Plaintiff filed an Objection to the Report (ECF No. 22), and the Commissioner replied (ECF No. 24).

## II. STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making *de novo* determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). While the court is free to conduct a *de novo* review of the Report, the court's review of the Commissioner's final decision is "limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). "Substantial evidence has been defined innumerable times as more than a scintilla,

4

but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). When assessing whether the ALJ possessed substantial evidence, the court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). As such, the court is tasked with a "specific and narrow" review under the Act. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### III. DISCUSSION

Plaintiff makes two objections to the Magistrate Judge's Report, which are somewhat intertwined. (ECF No. 22 at 1-5.) First, Plaintiff argues that the Report improperly concluded that Dr. Hornsby's "contemporaneous treatment notes" support the ALJ's decision. (*Id*. at 3.) Plaintiff elaborates that the ALJ's limited discussion of Dr. Hornsby's treatment notes did not build an "accurate and logical bridge" between the record and his decision, as required by the law of this circuit. (*Id*. (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).) Plaintiff urges the court to reverse the ALJ's decision because it does not "contain[] sufficient precision to allow meaningful review" and "cherry-picks" evidence from the record to support his ultimate conclusion that Plaintiff was not disabled. (ECF No. 22 at 4-5.)

Plaintiff also claims the ALJ never actually articulated the consistency factor as to Dr. Hornsby's opinion, and that the Magistrate Judge improperly excused the ALJ's failure to consider teacher statements in assessing the consistency of Dr. Hornsby's opinion with the record. (ECF No. 22 at 4.) Plaintiff concedes that the new regulations do not require the ALJ "to articulate how [he] considered evidence from nonmedical sources using the requirements in [20 C.F.R. § 404.1520c(a)-(c)]." 20 C.F.R. § 404.1520c(d); (*Id*. at 2). But because the ALJ was still required to *consider* the consistency of the opinion with the entire record, including nonmedical sources,

5

Plaintiff argues the Report's findings on this ground were in error. (ECF No. 22 at 2-3 (citing *Jerri F. V. Kijakazi*, No. 1:20-4037, 2021 WL 3362227 at *14 (D.S.C. July 29, 2021)).)

The Commissioner replied to Plaintiff's Objection (ECF No. 24) and maintains the Magistrate Judge correctly determined that (1) the ALJ had in fact considered statements from Plaintiff's teachers in the functional domain of attending and completing tasks (*id.* at 3); (2) and that at any rate, sufficient evidence on the record supports the ALJ's finding that Dr. Hornsby's opinion was unpersuasive, so that any objection on this ground simply "amounts to disagreement" with how the evidence was weighed (*id.* at 4). Plaintiff requests the court set aside the Magistrate Judge's Report and remand the action for further administrative proceedings. (ECF No. 22 at 5.) The court considers these objections together.

### A. <u>Dr. Hornsby's Opinion</u>

An ALJ "must include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations.'" *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016)). The Fourth Circuit "makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (citing *Woods*, 888 F.3d at 694). The ALJ must therefore logically connect the medical evidence to his conclusions. *See Dowell v. Colvin*, No. 1:12-cv-1006, 2015 WL 1524767, at *4 (M.D.N.C. Apr. 2, 2015). In doing so, the ALJ is not required to "specifically refer to every piece of evidence in her decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Nonetheless, the ALJ's decision "warrants some explanation." *Thomas*, 916 F.3d at 312.

6

Upon review, the court holds that the Report erred in concluding that the ALJ's decision regarding the persuasiveness of Dr. Hornsby's opinion was supported by substantial evidence. The ALJ either failed to consider or downplayed evidence and inconsistencies on the record involving Plaintiff's behavioral and learning impairments, which could have supported Dr. Hornsby's opinion and changed the ALJ's assessment of Plaintiff's function in several domains. Because Plaintiff "already has a marked limitation in [one domain], []any error in finding [a] 'less than marked' [limitation] in another domain would be relevant as to harmful error." *April Lockwood v. Saul*, No. 4:19-cv-03404-DCC, 2020 WL 6927507, at *11 (D.S.C. Oct. 15, 2020), *report and recommendation adopted sub nom. Lockwood o/b/o N.S. v. Saul*, No. 4:19-CV-03404-DCC, 2020 WL 6918491 (D.S.C. Nov. 23, 2020).

The applicable regulation requires the ALJ to articulate the supportability and consistency of a medical opinion. 20 C.F.R. § 404.1520c(a), (b)(2). Here, Plaintiff argues that the ALJ's discussion of the consistency factor is insufficient in light of the record.

The court agrees. Dr. Hornsby, a developmental-behavioral pediatric specialist, has been treating Plaintiff since August 2017.[3] (ECF No. 16 at 8.) The record contains detailed treatment records from her office which demonstrate an intimate familiarity with Plaintiff's medical, behavioral, and educational impairments. When these records align with observations from Plaintiff's mother, teachers, and other treatment providers, they are entitled, at a minimum, to a thorough discussion before they are discounted. The ALJ's analysis of Dr. Hornsby's treatment

---

[3] Of course, the ALJ need not articulate *how* he considered the length, purpose, and extent of the treating relationship under the new regulations. *See* 20 C.F.R. § 404.1520c (b)(2). But this does not mean these considerations simply disappear. The regulation still requires the ALJ to consider each factor regardless of the articulation requirement. *See* 20 C.F.R. § 404.1520c(c) ("We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case.")

records, however, is limited at best.[4]  For instance, the ALJ relies heavily on Dr. Hornsby's impression that Plaintiff's ADHD and impulsiveness symptoms improved with medication. (ECF No. 12-2 at 21, 24.)  But Plaintiff's problems associated with ADHD only tell part of his story. The record is replete with evidence of severe behavioral problems which the ALJ's decision ignores or summarily dismisses as a mere consequence of the "stressor of [Plaintiff's] parents' separation and changes in his living arrangement."  (ECF No. 12-2 at 24.)  The ALJ's characterization trivializes these issues and masks their concerning nature – evidently enough to prompt Dr. Hornsby's provisional diagnoses of autism spectrum disorder, intellectual disability, and learning disability, nearly a year before Plaintiff's parents separated.[5] (ECF No. 12-7 at 73-74.)  By way of example, Dr. Hornsby's October 2017 report remarks Plaintiff "never shares interests or achievements with parents," appears unable to listen, and is "very difficult to soothe." (*Id*. at 73.)  She notes "stereotyped and repetitive speech, motor movements, or use of objects" which compel Plaintiff to injure himself by banging his head and hitting himself. (*Id*. at 74.)  She identifies Plaintiff's "highly restricted, fixated interests that are abnormal in intensity or focus," including preoccupations with dinosaurs, rocks, stones, and death.  (*Id*.)  Importantly, these symptoms were noted *before* Plaintiff's parent's separation in 2018.  The ALJ did not consider

---

[4] The ALJ's characterization of Dr. Hornsby's opinion as Plaintiff's "representative's summarization of her notes" is inaccurate.  Plaintiff's representative interviewed Dr. Hornsby and memorialized her answers.  (ECF No. 12-7 at 463.)  Before the opinion was submitted to the Commissioner, Dr. Hornsby made handwritten edits and signed the final document. (*Id*. at 462-463.)  The court considers this document Dr. Hornsby's own opinion. In this light, the court emphasizes that "[t]he [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits."  *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), *as amended* (Apr. 9, 1996)(quoting *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or.1993)).

[5] The record indicates Plaintiff's mother separated from her partner, which may have exacerbated some of Plaintiff's symptoms.  But the separation apparently took place around the time of Plaintiff's September 2018 visit, while behavioral, social, and self-injurious behaviors are reflected in Dr. Hornsby's records as early as October 2017. (ECF No. 12-7 at 74.)

this fact and did not account for the persistent nature of Plaintiff's behavioral issues identified throughout Dr. Hornsby's records.  The September 2018 report from Dr. Hornsby's clinic[6], for example, indicated that Plaintiff was "smearing [bowel movements] on the walls," and continued to hit and bite.  (ECF No. 12-7 at 358.)  It is true that Plaintiff's mother suspected the separation could have exacerbated these troubling behaviors.  But Plaintiff's inability to deal with change without resorting to aberrant or self-injurious coping mechanisms is surely indicative of profound behavioral challenges which apparently did not improve with time.

In September 2019, more than a year after Plaintiff's parents' separation, Dr. Hornsby evaluated him again and noted little improvement as to his *behavioral* symptoms: Plaintiff still "played with his [bowel movements]," rocked back and forth persistently, made cat sounds constantly, and started "eye blinking" a few months before the evaluation.  (*Id*. at 476.)  Even if medication improved Plaintiff's ADHD symptoms and eased related anxiety, no medication was (nor could be) prescribed for his persistent repetitive behaviors, obsessions, and problems with transitions and change.  These records therefore support Dr. Hornsby's impression that Plaintiff "is still very seriously limited despite treatment," particularly "in his ability to independently initiate and sustain both interactions and relations with others,"[7] "initiate and sustain care for himself," and "adapt and manage himself."  (ECF No. 12-7 at 462.)  The ALJ "glosses over these significant problems."  *See Green on behalf of T.L. v. Berryhill*, No. 2:18-cv-1187-DCC, 2019 WL 4667718, at *3 (D.S.C. Sept. 25, 2019) (explaining that the ALJ failed to adequately address relevant evidence when he characterized the claimant's behavior, which included hitting, spitting,

---

[6] The visit was conducted by physician's assistant Jennifer Simko.  (ECF No. 12-7 at 358.)

[7] The common-sense notion that these behaviors could possibly cause a nine-year-old child to struggle to relate to others, suffer alienation from his peers, or indicate an inability to care for himself requires no explanation.

9

kicking, profanity, and angry outbursts in class, as "some noted behavior difficulties."). The ALJ does not explain how Dr. Hornsby's treatment notes are more consistent with his findings of "less than marked" limitations in the relevant domains than with Dr. Hornsby's own opinion, which endorses much greater limitations.

In assessing the consistency of Dr. Hornsby's opinion, the ALJ's failure to consider Plaintiff's academic performance raises similar issues. Dr. Hornsby's treatment records indicate that she was familiar with Plaintiff's educational limitations, including the noteworthy fact that Plaintiff was performing at a kindergarten level in his regular fourth grade class. (ECF No. 12-7 at 476.) During her treatment, Plaintiff failed state testing but was still advanced to the next grade level due to the "social ramifications" of holding him back. (*Id*. at 480.) So, while Plaintiff's ability to focus may indeed have improved with medication, his well-documented academic struggles persisted. The record demonstrates that even after two years of treatment with ADHD medication, Plaintiff was still performing several grade levels below his peers, despite the fact that he was getting help through his individualized education program and various forms of therapy. Social Security Ruling SSR 09-2p explains that "if a child needs a person, structured or supportive setting, medication, treatment, or a device to improve or enable functioning, the child will not be as independent as same-aged peers who do not have impairments . . . [and] such a child has a limitation, even if the child is functioning well with the help." SSR 09-2P, 2009 WL 396032 (Feb. 18, 2009). One court explained that in these cases, the claimant's "ability to remain in an age-appropriate grade level is only due to the extensive intervention and constant support at school, without which she would be failing." *Mohamed v. Astrue*, No. 08-cv-0598 S, 2010 WL 2640541, at *5 (W.D.N.Y. June 29, 2010). Here, the ALJ did not consider the role of the school's "constant

intervention" and support, which could possibly evidence greater impairments in the domain of "acquiring and using information," supporting Dr. Hornsby's view.

At bottom, Dr. Hornsby's opinion appears to be consistent with these facts and reflects her awareness of Plaintiff's documented academic challenges and learning disabilities. Thus, her opinion finds support in the record that is simply not discussed in the ALJ's persuasiveness analysis. Numerous reports from Plaintiff's teachers also explain his academic limitations and difficulties. (*See, e.g.,* ECF No. 12-6 at 198, 203 (teacher statements discussing Plaintiff's "learning disorders in reading, word comprehension, writing, and mathematics" and other academic challenges.)[8] Plaintiff's difficulties in fundamental skills like reading could possibly evidence substantial limitations in the acquiring and using information domain. *See, e.g., Smith ex rel. J.H. v. Colvin*, 935 F. Supp. 2d 496, 506 (N.D.N.Y. 2013) ("The fact that J.H. cannot function at grade level in a fundamentally important subject like mathematics, in spite of the highly structured and supporting environment of her special education program and a student-teacher ratio of thirteen to three, strongly indicates a marked limitation in the 'acquiring and using information' domain.") The ALJ's discussion does not take these considerations into account.

The ALJ appears to interpret improvements in Plaintiff's ability to focus with the help of medication as a general improvement in his broader limitations, including his academic difficulties. In doing so, the ALJ fails to explain how Dr. Hornsby's opinion is inconsistent with

---

[8] The Report states the ALJ was not required to consider teachers' statements beyond his assessment that Plaintiff had a marked limitation in attending and completing tasks. (ECF No. 21 at 12.) Indeed, the new regulations do not require the ALJ to *articulate* how the nonmedical evidence was used. 20 C.F.R. §404.1520c(d). But here, there are substantial inconsistencies between the ALJ's decision that Dr. Hornsby's opinion was "unpersuasive" and a record which indicates that Plaintiff had notable behavioral, social, and academic impairments that could impact several functional domains. The ALJ must at least consider and explain these inconsistencies to permit judicial review. This is not a *per se* rule of articulation for nonmedical sources, but rather, an application of the requirement that substantial evidence supports the ALJ's findings.

11

the record to the point of being unpersuasive, because evidence that supports Plaintiff's limitations is simply left out of his analysis or listed without further explanation. This indicates that the ALJ may have cherry-picked facts which support a finding of nondisability. But such facts will exist on any record. And an exclusive reliance upon them, without a "logical bridge" between the whole record and the ALJ's conclusion, hampers the court's review and warrants remand. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Here, a physician opined Plaintiff had much greater limitations than the ALJ's findings suggest. Had the ALJ assigned more weight to Dr. Hornsby's opinion, he may have found a marked limitation in at least one other domain to support a finding of disability. Therefore, the court cannot state that the ALJ avoided harmful error in his treatment of Dr. Hornsby's opinion. The court rejects the Magistrate Judge's Report on this ground.

### B. Substantial Evidence

The court need not decide whether the ALJ's entire decision was supported by substantial evidence. His failure to consider all relevant evidence and "explain [his] decision with sufficient precision" with regard to an important medical source opinion alone supports remand. *See Snyder's-Lance, Inc. v. Frito-Lay North America*, 991 F.3d 512, (4th Cir. 2021) (explaining that the "substantial evidence" standard still requires sufficient explanation). Still, the court notes that the ALJ's analysis demonstrates other causes for concern. For instance, he does not discuss how Plaintiff's behavioral challenges figure into his decision involving the most obviously related functional domains, including acquiring and using information, interacting and relating with others, and caring for himself. His analysis of the acquiring and using information domain appears to rely primarily on Plaintiff's progress in his speech therapy class. (ECF No. 12-2 at 22-23.) But Plaintiff's obvious and well-documented learning difficulties, including the fact that he was performing at a kindergarten level in fourth grade are simply glossed over in this context. Speech

therapy and primary education are obviously distinct. For example, "a []child could have a marked or extreme limitation in the domain of acquiring and using information if he had a serious learning disability which had prevented him from learning to read and write even though he was of normal intelligence and had good verbal communication skills." *Fagin ex rel. B.P. v. Comm'r of Soc. Sec.*, No. 1:10-cv-813, 2012 WL 213801, at *9 (S.D. Ohio Jan. 24, 2012), *report and recommendation adopted sub nom. Fagin v. Comm'r of Soc. Sec.*, No. 1:10-cv-813, 2012 WL 481787 (S.D. Ohio Feb. 14, 2012) (quoting *McClain v. Barnhart*, 299 F. Supp. 2d 309, 315 (S.D.N.Y.2004)). The ALJ's failure to analyze learning disabilities observed by Plaintiff's school, mother, and doctor, while relying on improvements in the narrow context of speech therapy appears disingenuous at best. If multiple teachers agree that Plaintiff's limitations in this domain were greater than what the ALJ ultimately concluded, their opinions demand deeper consideration.

Similarly, the ALJ's discussion of three other domains (moving about and manipulating objects, caring for himself, and health/physical well-being) is limited to a single four-sentence paragraph and supported only by a string citation of documents on the record, without any discussion of what these documents actually contain:

> "Finally, the claimant has no limitations in moving about/manipulating objects, caring for himself, and health/physical well-being. While the claimant underwent physical therapy to address muscle weakness and coordination, he improved with treatment and showed no signs of pain, nor was his mother able to identify any effect on his daily function (Ex. 22F/3-6, 10, 17). His neurological evaluations were consistently normal, as was his coordination (See, e.g., Ex. 9F/3, 12, 15; 10F/6; 13F/10; 17F/8, 19, 25). Educational records also do not support limitations in these domains (*See, e.g.,* Ex. 6E, 10E, 16E, 21E, 27E, 28E, 29E)."

(ECF No. 12-2 at 23.) This treatment fails to consider substantial evidence that could indicate greater limitations in Plaintiff's ability to care for himself. Under the law of this circuit, "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Woods*, 888 F.3d at 694. And here, the ALJ's analysis fails to list evidence at all,

referencing mere citations to the record instead.  At a minimum, Plaintiff's repetitive and self-injurious behaviors, emotional difficulties and inability to cope with change, and fixation with bowel movements demand more nuanced analysis.  And at any rate, a coherent explanation of the ALJ's conclusions is critical as to this domain.  On remand, therefore, the ALJ should properly reconcile these considerations and other similar evidence with his conclusions.

Plaintiff presented additional objections to the Report.  (ECF No. 22 at 2-5.)  The court need not consider these arguments because the ALJ will have an opportunity to reconsider the entire decision and will reexamine the evidence in totality during a *de novo* review.  *See Fleeger v. Berryhill*, No. 16-318, 2017 WL 1437193, at *4 n.3 (W.D. Pa. Apr. 24, 2017) (declining to consider an additional argument by a claimant because the claimant's RFC would be reconsidered *de novo* by an ALJ); *Astuto v. Colvin*, 16-CV-1870 (PKC), 2017 WL 4326508, at *8 n.7 (E.D.N.Y. Sept. 28, 2017) (declining to consider an additional argument by a claimant because the action would be considered *de novo* by an ALJ).  Thus, the court need not issue findings about Plaintiff's additional objections because the ALJ will oversee new administrative proceedings.  *See Toney v. Berryhill*, No. 9:17-cv-00080, 2018 WL 4090630, at *5 n.5 (D.S.C. Aug. 28, 2018) ("Because the court has determined remand to be appropriate for these reasons, the court declines to address [claimant's] other objections to the Report.").

## IV. CONCLUSION

After a thorough review of Plaintiff's Objections (ECF No. 22) and the Magistrate Judge's Report (ECF No. 21), the court **REJECTS** the Magistrate Judge's Report and Recommendation (ECF No. 21), **REVERSES** the Commissioner's decision, and **REMANDS** the action under sentence four of 42 U.S.C. § 405(g) for further administrative review consistent with this order.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 3, 2022
Columbia, South Carolina

15